UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Kermit Gabel, | Case No. 3:11 CV 2404 |
|     Plaintiff, | JUDGE JAMES G. CARR |
|   v. | OPINION AND ORDER |
| Jason Bunting, *et al*., | |
|     Defendants. | |

*Pro se* Plaintiff Kermit Gabel filed the above-captioned action under 42 U.S.C. § 1983 against Marion Correctional Institution ("MCI") Deputy Warden Jason Bunting, MCI Deputy Warden Tim Mulligan, MCI Physician Constance Mosher, MCI Health Care Administrator Edward Castaneda, MCI School Principal Celestina Obbuehi, MCI Assistant School Principal J. Rhinehart, MCI Librarian Thomas King, MCI Institutional Inspector R.D. Smith, Ohio Department of Rehabilitation and Correction ("ODRC") Medical Services Bureau Chief Dr. Stuart Hudson, ODRC Director Gary Mohr, ODRC Transfer Supervisors John Does, ODRC Assistant Chief Inspector for Medical Claims Mona Parks, and ODRC Classification Director W. Eleby. In the Complaint, Plaintiff challenges conditions of his confinement in MCI. He seeks monetary and injunctive relief.

Plaintiff also filed an Emergency Motion for Injunction (ECF No. 3) seeking to prevent his transfer to another correctional institution during the pendency of this case. He contends that there is considerable turmoil at MCI caused by budget cuts and staff moves associated with the sale of the North Central Correctional Institution ("NCCI") to a private prison corporation. He claims that on

December 31, 2011, some of the correctional officers at MCI will be laid off and replaced by officers from NCCI who have more seniority.  He alleges thirteen inmates have already been transferred from MCI to NCCI , which is located across the street from MCI.  He indicates that three of those inmates were active in the law library.  He is concerned that because he has an active legal case, he will also be moved.  He indicates he is 85 years old, and enjoys close proximity to the Ohio State Medical Center.  He also claims his transfer while this case is active would make it difficult for him to have access to witnesses and evidence.  For the reasons set forth below, this Motion is **denied** and this action is dismissed.

## I. Background

Although Plaintiff's Complaint is extensive, his claims can be divided into four basic categories.  First, Plaintiff asserts the institution is overcrowded.  Second, he alleges a number of claims pertaining to the medical department at MCI.  Third, Plaintiff contends the law library is too small for the inmate population and is not open a sufficient number of hours.  Finally, Plaintiff claims the food portions are inadequate.

### A.  Overcrowded Conditions

Plaintiff contends MCI is "grossly overcrowded."  (ECF No. 1 at 4.)  He believes this is due to a breakdown in the ODRC classification system.  He indicates that until the spring of 2011, MCI housed mainly older inmates.  He contends in 2011, younger inmates began to arrive at the prison resulting in more fights, and increased theft.  He states that it also created hot water shortages, longer pill lines, longer food lines, fewer library resources, shorter recreation periods, and fewer visiting times.  He contends John Doe, Gary Mohr, and W. Eleby are responsible for the overcrowded conditions at MCI, which he contends violate his Eighth Amendment rights.

### B. Medical Issues

Plaintiff alleges that the MCI Medical Services Department is completely disorganized. He contends the pill call window on occasion is not open at the time it is scheduled to be open and often closes before all of the inmates have received medications. At times, he claims medical department employees dispensing medications do so too quickly to be accurate. He claims he was charged co-pay fees for visits that should have been exempt. On one occasion, he was placed on a mandatory pass list which required him to see the nurse or be sent to segregation. He was charged a co-pay for the appointment, which he claims is extortion. He contends a trip to the OSU Medical Center was delayed because neither OSU or MCI would admit it was their responsibility to schedule it. He cites to an occasion when he had an appointment with a physician who did not speak to Plaintiff much during the visit due to a possible language barrier. He states he was denied a regularly scheduled spinal shot after he was observed playing "tug of war" with a dog in the cell block. He claims that his Eighth Amendment rights have been violated by Dr. Mosher, Mr. Castaneda, Dr. Hudson, Ms. Parks, and Mr. Bunting.

### C. Law Library

Plaintiff claims the law library is very small and often overcrowded. He contends that there are only four data computers for Westlaw research, four word processors, two tables and eight chairs. He states the Librarian Dr. King dictates that the word processors can only be used for legal work. He indicates he can find no such written rule mandating this policy. He contends there are a number of occasions in which he has a pass for the law library but arrives to find it is full, and all of the computers in use.

Plaintiff further alleges the Librarian is frequently absent from work, resulting in closure of

the library. He contends Dr. King takes numerous personal vacation days, and holidays. He claims that when Dr. King is not present, the library closes for the day. Plaintiff states that from February 1, 2010 to December 31, 2010, the law library was closed 25 days. He indicates Dr. King took 13 days of vacation as well. He indicates the library was closed for 18 days from January to September 2011. He informed prison staff, including Mr. Rhinehart, that teachers from the school should be required to fill in when Dr. King is absent. He contends there are generally three to four teachers sitting around drinking coffee who could be assigned to the law library. The Defendants have rejected his suggestion.

Plaintiff claims Dr. King inspects his photocopies and word processing materials at the library. He was told this was because he was found on three or four occasions to be using the machines for work that was not legal in nature. He objected to this practice and filed grievances. He claims his grievances were denied because the Institutional Inspector and Dr. King are friends.

Plaintiff asserts Deputy Warden Jason Bunting, Deputy Warden Tim Millican, School Principal Celestina Ogueghi, Assistant Principal J. Rhinehart, Librarian Dr. King, and Inspector R. D. Smith are "responsible in one way or another for the problems outlined" herein. (ECF No. 1 at 21.)

### D. Food

Finally, Plaintiff claims that MCI has "serious food problems." (ECF No. 1 at 22.) He indicates the ODRC has a dietician who prepares a master menu for all Ohio prisons on a three to four week cycle. This menu is designed to guarantee that inmates consume a certain number of calories per meal. He alleges that MCI food service workers have reduced the portion sizes of the meals so that six ounce portions are now four ounce portions. He asserts that Deputy Warden

Bunting and Deputy Warden Milligan are responsible for the food problems because they are charged with maintaining the health of the inmates at the institution.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

### III. Analysis

Aside from asserting that the overcrowded conditions and the medical issues resulted in a violation of his Eighth Amendment rights, Plaintiff does not specify which legal claims he wishes to assert with respect to his allegations about the law library and the food portions. He merely states that these conditions "are in violation of his constitutional rights... ." (ECF No. 1 at 1.) Based on the content of the allegations, the Court liberally construes his claims concerning the law library as an attempt to assert a denial of access to the courts in violation of the First Amendment, and his claims concerning the food portion sizes as arising under the Eighth Amendment.

#### A. Eighth Amendment

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9.

Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### 1. Overcrowded Conditions

Plaintiff first objects in general terms to the increased prison population at MCI and constraints this places on the prison's resources. He asserts these claims against the ODRC Transfer Supervisor, the ODRC Director and the ODRC Classification Director.

Accepting Plaintiff's allegations as true, they do not state a violation of his Eighth Amendment rights. While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. The Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987). Although Plaintiff may have been subjected to uncomfortable conditions, forced to wait in longer lines, and required to share limited resources with a greater number of inmates, he does not allege with any specificity that he was denied basic necessities or subjected to conditions that constitute serious threats to his health. *Rhodes*, 452 U.S. at 348. His general claims of overcrowding are dismissed. Because there

are no other claims asserted against John Doe, Gary Mohr, and W. Eleby, they are also dismissed from this action.

### 2. Medical Concerns

Plaintiff next complains that his Eighth Amendment rights were violated by inconsistent and shortened pill call times, unfair assessments of medical co-pay fees, a delayed trip to the OSU Medical Center, a physician who did not speak much to Plaintiff during an appointment and the denial of a regularly scheduled spinal shot. He asserts these claims against Dr. Mosher, Mr. Castaneda, Dr. Hudson, Ms. Parks, and Mr. Bunting.

To establish an Eighth Amendment claim for inadequate medical care, Plaintiff must first demonstrate that he was denied medically necessary treatment and that the injury was sufficiently serious. *Wilson*, 501 U.S. at 297 (stating that Eighth Amendment is implicated by the "unnecessary and wanton infliction of pain" and not "inadvertent failure to provide adequate medical care"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). If the Plaintiff has satisfied the objective component, he must then demonstrate that the Defendants acted with deliberate indifference to his serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Not all of Plaintiff's medical concerns suggest he was denied medically necessary treatment. He claims the times that the pill call window is open are inconsistent and shortened. He does not allege, however, that he has been denied medication for a serious medical condition as a result of these incidents. He claims a trip to the OSU Medical Center for a follow up visit was delayed. He does not supply the medical condition that prompted the appointment and does not indicate that he experienced any compromise to his health as a result of the delay. He contends he had an appointment with a physician who did not speak to him at length which he concluded was the result

-8-

of language barrier. He does not suggest that this language barrier result in a deprivation of medical care. Plaintiff also alleges he is unfairly charged co-pay fees. This does not present the type of serious deprivation that triggers Eighth Amendment protections. *See Rhodes*, 452 U.S. at 347.

Plaintiff does mention that he was denied a regularly scheduled spinal shot. The shot was determined to be medically unnecessary after Plaintiff was observed playing tug of war with a dog in the unit. As an initial matter, Plaintiff does not allege why he is receiving the shot and does not indicate whether this deprivation was more than an isolated instance. To the extent however that this could be construed as an objectively serious deprivation of medical care, Plaintiff fails to satisfy the subjective component of his Eighth Amendment claim by demonstrating that the Defendants were deliberately indifferent to his serious medical needs.

An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. *Farmer*, 511 U.S. 837. Mere negligence will not suffice. *Id.* at 835-36. Consequently, allegations of medical malpractice, negligent diagnosis, or negligent treatment fail to state an Eighth Amendment claim.

Plaintiff alleges he was informed on April 12, 2011 that the Central Office refused his trip to the OSU Medical Center for a spinal shot. He indicates Dr. Stuart Hudson denied the request for the visit. He filed an Informal Complaint which was denied by Mr. Castaneda and a formal Grievance which was denied by the Institutional Inspector R.D. Smith. He was told local physicians no longer make decisions on which inmates are transported to the Corrections Medical Center or Ohio State Medical Center for treatment. That decision is made by someone at the ODRC Central Office. In his appeal of the denial of the Grievance to the Chief Inspector, Mona Parks indicated

that a corrections officer reported that Plaintiff was playing tug of war with a dog in the unit and behaving in a manner inconsistent with the need for a pain injection.

Mr. Castaneda, Mr. Smith, and Ms. Parks are all named as Defendants in this claim because they responded unfavorably to his grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). "The denial of the grievance is not the same as the denial of a request to receive medical care." *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. June 7, 2001).

Plaintiff includes only one allegation against Dr. Hudson suggesting that he denied the request for a visit to the Ohio State Medical Center. This bare bones statement, alone, does not suggest that this Defendant acted with a conscious disregard of a substantial risk of serious harm to the Plaintiff as opposed to making a negligent treatment choice based in potentially inaccurate information. To meet the pleading standards of Rule 8, the Plaintiff must plead factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949. Plaintiff must do more than suggest a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* While Plaintiff's singular allegation against Dr. Hudson is not inconsistent with the possibility of liability, it is insufficient to allow the Court to draw any reasonable inference that this Defendant personally violated Plaintiff's Eighth Amendment rights.

### 3. Food Concern

Plaintiff's limited allegations concerning the food portions also fail to state an Eighth

Amendment claim. Although deprivations of "essential food" can trigger Eighth Amendment protections, deprivations which cause mere discomfort or inconvenience do not state a claim for relief. *Rhodes*, 452 U.S. at 348; *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation). Plaintiff alleges that the meal portions have been reduced in size; however, simply reducing serving sizes does not automatically result in a deprivation of the essential amounts of food required to meet Eighth Amendment standards. Plaintiff does not allege sufficient facts to allow this Court to draw the inference that this action has deprived him of the basic requirement of food as opposed to merely causing him discomfort because he is not getting as much food as he is accustomed to being served.

Even if the Court concluded that Plaintiff's allegations plausibly satisfied the objective component of this claim, there is no indication that the Defendant against whom the claim is asserted were sufficiently culpable. He names Deputy Warden Jason Bunting and Deputy Warden Milligan as Defendants because they are ultimately responsible for the well-being of the inmates in the institution. There are no allegations suggesting that these Defendants are aware that food portions have been reduced or that either of them participated in making this decision. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Even liberally construing the limited allegations in the Complaint, there is no indication that either of these individuals acted with deliberate indifference to Plaintiff's health or safety.

### B. Access to the Courts

Finally, Plaintiff's allegations concerning the law library are construed as a claim for denial

of access to the courts.  To state a claim for denial of access to the courts, Plaintiff must allege particular actions of Defendants prevented him from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus petition, or civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The right of access to the courts is directly related to an underlying legal claim, without which a Plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996).  In order words, he must demonstrate "actual injury" by showing that his underlying legal claim was non-frivolous, and that it was frustrated or impeded by Defendants.  *Lewis*, 518 U.S. at 353.  "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint...." *Christopher*, 536 U.S. at 415.

Here, Plaintiff alleges only in general terms that the law library in the prison is inadequate. This is insufficient to state a claim.  An inmate cannot establish an actual injury simply by stating his prison's law library or legal assistance program is sub-par in some theoretical sense.  *Lewis*, 518 U.S. at 351.  The inmate must go one step further and demonstrate that the alleged shortcomings in the library prevented his efforts to pursue an actual legal claim.  *Id.* at 353.  Plaintiff has not alleged Defendants prevented him from pursuing a particular non-frivolous action.  His claim for denial of access to the court must be dismissed.

### IV.  Emergency Motion for Injunction

Plaintiff's Emergency Motion for Injunction must be denied.  A temporary restraining order and a preliminary injunction are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v.*

*Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The purpose of a preliminary injunction is to prevent irreparable injury and to preserve the Court's ability to render a meaningful decision on the merits. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir.1998). To determine whether a temporary restraining order or a preliminary injunction should issue, the Court must consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir.2007); *Rock & Roll Hall of Fame & Museum v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998). The Court must balance these factors. They are not prerequisites that must be met. *Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir.1997). The Court should examine each factor "unless fewer factors are dispositive of the issue." *Id*. at 399.

First, Plaintiff has no likelihood of success on the merits nor will he suffer irreparable harm if the Motion is not granted. He has not been told he is actually being transferred. He is simply speculating that this might occur in the future. Moreover, even if he were told transfer was imminent, a prisoner has no constitutional right to be incarcerated in a particular prison or to be held under a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). This action is being dismissed in its entirety, so Plaintiff's assertion that he needs to stay at MCI to be close to witnesses and evidence is moot. There is no basis for granting this Motion.

**V. Conclusion**

Accordingly, Plaintiff's Emergency Motion for Injunction (ECF No. 3) is denied, and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies pursuant to 28 U.S.C.

§1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

    IT IS SO ORDERED.

                                        <u>S/ JAMES G. CARR</u>
                                        UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.